UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| REGINA BRATTON *Plaintiff,* v. AMERICAN CONSERVATIVE UNION, CONSERVATIVE POLITICAL ACTION COALITION, AMERICAN CONSERVATIVE UNION FOUNDATION, MATT SCHLAPP, individually and as agent of the co-defendant companies, MERCEDES SCHLAPP, individually and as agent of the co-defendant companies, DAVID SAFAVIAN, individually and as agent of the co-defendant companies, *Defendants.* | CA No.: 1:23-cv-1179 JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

**COMES NOW** Plaintiff, Regina Bratton ("Bratton" or "Plaintiff"), by and through undersigned counsel, and brings this Complaint against the American Conservative Union ("ACU"), the Conservative Political Action Coalition ("CPAC"), the American Conservative Union Foundation ("ACUF")(collectively these three defendants may be referred to as "CPACo" or "the co-defendant companies"), Matt Schlapp, Mercedes Schlapp and David Safavian, and prays that this Court grant the relief requested herein, and states the following in support thereof:

**PARTIES**

1.      Plaintiff Regina Bratton is an African American female and resident of Virginia. Bratton served for CPAC / the ACU as the director of marketing and communications and executive producer of "CPAC Now, America Uncanceled" from October 2021 until she was terminated in March 25, 2022. Prior to accepting the director's position, Bratton contracted with CPACo as a media manager for the Conservative Political Action Conference for more than six years.

2.      Defendant Conservative Political Action Coalition ("CPAC") is an American political organization that advocates for conservative policies, endorses and funds political candidates, and organizes the Conservative Political Action Conference. CPAC operates out of, among other locations, 1199 N. Fairfax St, Suite 500, Alexandria, VA 22314. Upon information and belief, the co-defendant companies are now all under the umbrella of CPAC. This defendant is called to defend Count I and Count II.

3.      Defendant American Conservative Union ("ACU") is a non-stock corporation registered to do business in Virginia and an American political organization that advocates for conservative policies and organizes the Conservative Political Action Conference ("CPAC"). The ACU operates out of, among other locations, 1199 N. Fairfax St, Suite 500, Alexandria, VA 22314. Upon information and belief, the co-defendant companies are now all under the umbrella of CPAC. This defendant is called to defend Count I and Count II.

4.      Defendant American Conservative Union Foundation ("ACUF") is a non-stock corporation registered to do business in Virginia and an American political organization that advocates for conservative policies and organizes the Conservative Political Action Conference. The ACUF operates out of, among other locations, 1199 N. Fairfax St, Suite 500,

Alexandria, VA 22314. Upon information and belief, the co-defendant companies are now all under the umbrella of CPAC. This defendant is called to defend Count I and Count II.

5.  Defendant Matt Schlapp is the spouse of co-defendant Mercedes Schlapp and during the relevant time period worked for CPAC, served as CEO of the American Conservative Union and as Chairman of the American Conservative Union Foundation. This defendant made defamatory statements about Plaintiff following the unlawful termination of her employment with CPAC / ACU. This defendant is called to defend Count II – Defamation, both individually and as agent of the co-defendant companies,

6.  Defendant Mercedes Schlapp is the spouse of co-defendant Matt Schlapp and during the relevant time period worked for the co-defendant companies – her actual position and title are unknown. This defendant made defamatory statements about Plaintiff following the unlawful termination of her employment with CPAC / ACU. This defendant is called to defend Count II – Defamation, both individually and as agent of the co-defendant companies,

6.  Defendant David Safavian during the relevant time period was employed as general counsel for the co-defendant companies. This defendant made defamatory statements about Plaintiff following the unlawful termination of her employment with CPAC / ACU. This defendant is called to defend Count II – Defamation, both individually and as agent of the co-defendant companies,

## JURISDICTION AND VENUE

7.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1343(a)(4), and 1367.

8.  Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendants operate out of Northern Virginia; and that is where at all relevant times, Defendant was conducting business;

a

page

and that is where the events as well as the acts and omissions of the Defendants occurred, which give rise to the Plaintiff's claims for injuries, damages, and harms sustained.

## FACTS

### *General*

9. Matt Schlapp called Bratton personally and asked her to take the role of Director of Marketing and Communications and Executive Producer of CPAC Now. There was no application process.

10. At the personal request of Matt Schlapp, chairman of the ACU/CPAC, on October 7, 2021, Bratton entered into an agreement to work for ACU/CPAC as the Director of Marketing and Communications and Executive Producer of CPAC Now. Her annual salary was $160,000.00.

11. Schlapp's initial offer was a salary of $200,000.00. Lynne Rasmussen reduced the salary to $160,000.00 after Plaintiff agreed to take the position.

12. Bratton took the position after her predecessor, Ian Walters resigned under duress. She inherited a team four.

13. Bratton was the only African-American employed by CPAC / ACU (there were approximately 30 employees, interns and volunteers).

14. During her employment with CPACo, from 2021 - 2022 Plaintiff raised concerns about the terrible culture she was experiencing at the ACU and directly reported it to Lynne Rassmussen, Matt Schlapp and Mercedes Schlapp.

15. Matt Schlapp, Mercedes Schlapp and David Safavian conspired to and embarked upon a systematic, concerted effort to create a hostile work environment for the Plaintiff due to Plaintiff's race as she was not the only one speaking out against the toxic work environment,

against promoting deliberately untruthful, deceitful and false narratives, and raising concerns regarding the management of the co-defendant companies' finances.

16. In retaliation for Plaintiff's complaints of hostility in the workplace, Defendant CPAC first terminated Bratton, then, via its agents Matt Schlapp, Mercedes Schlapp and David Safavian, began spreading false and defamatory statements about Plaintiff to others.

17. Defendants' false and defamatory statements included that Plaintiff was untrustworthy, "an agent of the Chinese" and accused Plaintiff of treason.

18. Defendants' false and defamatory statements have harmed Plaintiff's professional reputation and caused Plaintiff to suffer emotional distress.

19. Plaintiff has suffered damages in the form of lost employment opportunities, harm to her reputation, and emotional distress.

20. These false and defamatory statements made by Defendant were made with malice and intent to harm Plaintiff's reputation and employment prospects.

21. Plaintiff suffered damages to her personal and professional reputation as a result of Defendants' false and defamatory statements.

22. Plaintiff also alleges that the co-defendant companies engaged in retaliation against Plaintiff as it terminated her employment for reporting behavior she in good faith believed to be discriminatory against her protected class – African-American, by: a. terminating her employment, and b. making the above referenced defamatory statements.

23. At the personal request of Matt Schlapp, chairman of the ACU/CPAC, on October 7, 2021, Bratton entered into an agreement to work for ACU/CPAC as the Director of Marketing and Communications and Executive Producer of CPAC Now. Her annual salary was $160,000.00.

24. Following her good faith complaints of discrimination and a hostile work environment, Bratton was terminated by the ACU/CPAC on March 25, 2022.

25. On Sunday, April 30, 2023; Bratton had an in-person conversation with Ian Walters, her predecessor at CPAC / ACU.

26. Walters informed Bratton that around November of 2021; after he resigned from his position; ACU/CPAC general counsel David Safavian contacted him by phone and informed him that he wanted him [Walters] to help create as hostile of a work environment as possible to force Bratton to resign.

27. Walters further informed Bratton that her suspicions of racism were accurate and that she was not imagining it. Walters told Bratton that David Safavian tried to enlist his help in creating a hostile work environment for her, in large part because Plaintiff is black.

28. In a resignation letter dated May 23, 2023, from former U.S. Congressman Bob Beauprez, who for 8 years served on the board of ACU/ACUF (CPAC) and his most recent position was Treasurer, wrote:

> Regina Bratton: She also came from Team Trump with supposedly sterling credentials in communications. You may recall that at a CPAC board meeting in Florida, she sat in and was lavished with accolades by Matt to the entire board. That praise evaporated within weeks as she was terminated after it was discovered she was connected to the CPC. That's right, the Communist Party of China. I have been told by David [David Safavian] that she has filed a wrongful termination claim against the organization. However, the executive committee has not received any documentation or status updates on the litigation. Former employees speak about the tension in the office, and the lack of clear direction. Stress is often overwhelming to the point that more than a few have succumbed to professional therapists and prescription drugs. There are reports of staff escaping to the restroom and being discovered crying openly. One employee became so despondent that she stepped away from a group of friends at a restaurant and was later rescued outside on the street walking aimlessly in traffic. You simply can't hear of all this, and dismiss it as "normal" office behavior.

*Discriminatory Behavior / Hostile Work Environment at the ACU*

29. Bratton quickly became aware that the culture at CPAC was terrible, as Matt Schlapp and his wife, Mercedes Schlapp, ran the organization as if they were the King and Queen – like a dictatorship which ignored rules, laws, and basic decency when dealing with employees.

30. Mercedes Schlapp would require Bratton serve as her personal stylist before show tapings, installing her hair clip-in; Matt Schlapp demanded Bratton keep [for his use / consumption] specific items e.g. diet Dr. Pepper, and other quirky demands not in Bratton's job description.

31. Ryan McGowan, who served as the director of finance until early April 2023, repeatedly brought concerns to the "King and Queen" about use and management of funds of the 501(c)(3), the 501(c)(4), the problems that existed given the mingling of funds related to the two entities, and the constant confusion caused by the failure to understand and respect the differences between the two entities given their respective 501 status.

32. The issue of the handling of finances was repeatedly brought up during director's meetings, but the issue was always tabled by the executives and general counsel to be handled "off-line."

33. This problems with finances issue was recently again brought to light by statements made by Charlie Gerow upon his resignation form the CPAC board, wherein he called on his former colleagues to conduct an independent forensic audit of the organizations finances. Gerow also called for review of all exit interviews of employees who had recently left – Bratton was not given an exit interview and no one would return her calls / emails when she was attempting to get her tax forms, equipment, property, and other employee

information. ACU Treasurer Bob Beauprez resigned in May 2023, stating that he had "lost confidence" in the organization's financial statements and suggested violations of the organization's bylaws.

34. There were repeated issues concerning a Turner J., yet Bratton was repeatedly told to "play nice" – curiously he was involved in all aspects of the ACU/CPAC, but for no apparent reason, as he was not employed by CPAC. He was supposedly a volunteer and he was engaged to one of the other director's (Macy C. – director of events).

35. Turner J. claims to be the heir to the Johnson and Johnson family fortune, is now married to Macy C., and they are very close to Matt and Mercedes Schlapp, explaining his unspecified role within and the free reign he is granted within CPAC.

36. Related to the recent suit against Fox News by Dominion Voting Systems, the executives (Matt and Mercedes Schlapp) at CPAC were constantly demanding that the "stolen election" narrative be pushed on the online show, CPAC Now America Uncanceled. They continued to push this false narrative of faulty machines and fraud which resulted in a stolen election, even after the events of January 6, 2021, and had a legal defense fund set aside to "defend "victims of January 6" (those accused of insurrection and other crimes).

37. Bratton repeatedly advised they should get away from the stolen election narrative, but she was shut down every time.

38. There were several instances of abuse and what Bratton deemed as racist attacks that she reported to Lynne Rasmussen who served as the closest thing to an HR manager (there was no formal HR manager / department).

39. Bratton also reported these instances to Mercedes Schlapp and the Chairman, Matt Schlapp.

40. Matt Schlapp told Bratton that she [Bratton] reported directly to him, but Lynne Rasmussen told Bratton that she was to report directly to Mercedes Schlapp.

41. Mercedes Schlapp's role was unclear, as was the reason she was on the payroll or considered Bratton's boss. It was believed she is/was a senior fellow.

42. Matt Schlapp witnessed two verbal attacks on Bratton – both involving Kaitlyn O., but took no action to discipline Ms. O or reprimand her.

*Aaron H. ("AH") – CPAC team member, Videographer and Editor for the ACU*

43. One of the team members Bratton inherited was AH. Curiously, AH was making $90k/year as a videographer – an unusually high level of compensation for that position at the organization (ACU/CPAC was not a "media" company).

44. The most egregious and outwardly sexist and racist harassment came from AH. The trouble with AH started immediately. Beginning with an intern named Katelyn Stotzky ("Stotzky") in November of 2021.

45. Bratton noticed how irritated AH would get with her, for no reason. He would turn visibly red. Stotzky came to Bratton to say that she felt uncomfortable. Bratton called AH in for a meeting. AH said Stotzky did not give him "enough respect." Bratton informed him that although she was an intern, she was a colleague and was to be treated as such.

46. Later that week AH told Bratton in the communications office that he did not "like working with women or for women." Bratton immediately informed Lynne Rasmussen and requested he be given a verbal warning / counseling.

47. AH worked with other women in his position, which left Bratton to believe that her race was a further factor to explain his unique behavior towards her.

9

48. Some time later, Rasmussen told Bratton that AH was "no friend" of Bratton's and that he was "bad-mouthing" her around the office. Bratton told her that she needed to put a stop to it. Bratton also informed Defendant Matt Schlapp, the Chairman of CPAC, and he said he would look into the situation.

49. On multiple occasions, Bratton would find AH looking through her office. That was troubling and Bratton told him he could not be in there without permission. AH again pushed saying he did have the right to be in there because it was part of the communications department.

50. AH would never follow instructions and repeatedly tried to undermine Bratton with Matt Schlapp and/or Mercedes Schlapp.

51. There was an instance where Bratton instructed AH to post a video on social media and he refused and said flat out that he would not do his job and said there was nothing Bratton could do about it.

52. While in a meeting with Lynne Rasmussen and Bratton, AH admitted that he was insubordinate on several occasions.

53. During Bratton's employ as director of marketing and communications and executive producer of CPAC Now America Uncanceled, on several occasions AH threatened and attempted to intimidate her, and for each instance, Bratton informed Lynne Rasmussen and Matt Schlapp.

54. In one of those instances, Bratton was meeting with Colton and Brie, two new members of the team, in her office behind a closed door. AH entered her office without knocking and refused to leave. He said he had a right to be there. Bratton immediately walked down the hall to Lynne Rasmussen's office to report this behavior and AH followed

her. Bratton told her what happened and AH pushed his way into the office and said: "yep, she shouldn't be in there behind a closed door."

55. Bratton returned to her office which was beside the communications office. AH said to Bratton, "I know you are going to try to get me fired. Now you have me writing a job description for my job. What a BITCH."

56. AH made this statement presumably because he was informed by others that Bratton had advised CPAC management that job descriptions should be developed to protect the organization – Bratton did this because she was developing new positions for the expanding department, and given the difficulty she was having with AH and other issues she was experiencing with her subordinates (with respect to some, simply her confusion about the level of compensation they were receiving).

57. Later that afternoon, AH entered her office again and said: "you know I may need that parking space after all because I carry my gun; unless I just bring it in here." Bratton reported that to Lynne Rasmussen.

58. During CPAC Orlando, February 2022; AH was still on the team. Bratton thought if she gave him more responsibility that he may grow into the role.

59. It was clear to Bratton that AH was incensed that he reported to her - a black woman.

60. For CPAC Orlando, Bratton hired freelance videographers, who were men and women of color, from all backgrounds: Hispanic, Black, Lebanese. AH made a comment to Bratton in the media office that CPAC was not an affirmative action employer, "why are you trying to make us an affirmative action employer?" Bratton reported this to Lynne Rasmussen.

61. Two of the contractors, Alton and Chester, also informed Bratton that AH was making unprofessional and unflattering remarks about Bratton during the entire conference; and that it was shocking. In addition to that, Aaron was again rifling through Bratton's belongings. Bratton reported this to Lynne Rasmussen.

62. The week of March 14, Bratton informed Lynne Rasmussen that AH's behavior was over the top racist and that she recommended termination. Rasmussen said she would speak to Matt Schlapp about it.

63. Bratton told Rasmussen she wanted to talk to her and Matt Schlapp about the date if AH were to be terminated, as AH made it clear that he has a firearm and Bratton believed him to be unstable (he broke down in tears once during a meeting with Lynne and Bratton; he said that he was having "emotional issues").

64. Rasmussen, Matt Schlapp and Bratton spoke about terminating AH (the week before Bratton's termination). Bratton told Schlapp that he was unstable and Rasmussen agreed.

65. Bratton told Matt Schlapp that they should carry this out on Monday, March 28, 2022. Bratton explained that AH would be expecting a termination on a Friday (3/25/22) and that AH was unstable, armed and to perhaps alert the police.

66. However, on Friday, March 25, 2022, Bratton was terminated.

67. During her employ, not once were steps of any kind taken to address any of the above-described complaints Bratton brought to the attention of CPACo executives.

*Kaitlyn O. ("KO"): Associate, Nolan Center for Justice*

68. KO was part of the staff for the Nolan Center for Justice which is an arm of the ACU. She is not a director, as Bratton was. She was a subordinate.

69. KO worked for David Safavian, the general counsel for the ACU. KO worked on the criminal justice initiative.

70. There were two occasions in which KO was openly hostile towards Bratton. Matt Schlapp witnessed both instances.

71. The first was an interview that Mercedes and Matt Schlapp were to conduct on CPAC Now with the family of a man on death row who was apparently wrongly convicted.

72. The Schlapps were late to get to the studio for the interview. During the interview, there were some technical issues, KO showed her frustration and screamed at Bratton. KO then said: "she [Bratton] shouldn't be here."

73. Afterwards, Matt Schlapp came to Bratton's office and asked Bratton if that was normal for Bratton to be treated like that. Bratton told him it was normal that KO was not the first and reminded him of her previous complaints of how she was being treated by certain persons which were all ignored, so what did he expect.

74. Shortly thereafter, David Safavian called Bratton in his office for a "chat". He told Bratton that KO had a knack for putting her foot in her mouth. He told Bratton that he needed KO. He asked Bratton to do him a favor and go to KO and apologize. Bratton asked why she was being asked to apologize to KO. David Safavian said he would consider it a "personal favor" because he needed to keep KO happy.

75. Bratton went to Lynne Rasmussen to report this.

76. A few weeks after, Bratton went to KO, in her office, as David Safavian had asked, and Bratton asked if they could talk. Bratton asked her to explain what went wrong from her perspective.

77. In a very nasty tone with a very nasty disposition KO stated: "Regina you don't know our people." Bratton asked her what she meant by 'our people'. She said: "You kept them waiting and that made me look bad. You don't know how to do your job."

78. Bratton explained to her that she could not control the Schlapps' schedule and that they were late all the time which is why Bratton told her to let Bratton handle the scheduling and to not promise anything. Then KO screamed at Bratton.

79. Matt Schlapp was walking by at the time. KO screamed: "you don't fit here. You don't know how we do things and it's you who are out of line!" (This, again, is Bratton's subordinate).

*David Safavian ("Safavian"): ACU General Counsel*

80. Safavian served as general counsel for the ACU during the relevant time period. Safavian is a former felon, spent time in prison, and was later pardoned by former president Donald Trump.

81. Safavian openly threatened Bratton in his office right after Bratton was hired.

82. Safavian met with Bratton in his office and told Bratton that no one denied that the ACU and CPAC was a "shit-show". He also said that everyone had to work very hard to keep "Matt and Mercy honest." Safavian also took it upon himself to help Bratton connect with what he described as the "right black friends."

83. Safavian told Bratton it had to be tough [for Bratton] to be a black conservative and he wanted to help her. He connected Bratton with at least two people via email. He said Bratton may find it hard to be accepted as he found difficulties due to his criminal past.

84. Matt Schlapp and his wife often would require that Bratton work on their personal projects, which Bratton could not do. Bratton was an employee for the ACU/CPAC therefore all of her work was to be on behalf of the ACU/CPAC.

85. For example, Matt Schlapp wrote a book and he demanded Bratton to promote and market his book. He required that Bratton be involved in all of the meetings for his book. This was not an ACU project. This was his personal project.

86. Safavian called Bratton into his office and threatened Bratton over Matt Schlapp's book. He pointed at Bratton and said: "I'm not going to tell you again to *not* fucking help Matt with his book, or else our next conversation will be very different."

87. During that conversation with Safavian, Bratton's phone rang and it was Matt Schlapp. Bratton looked at it and Safavian told Bratton to look at him when he was talking to her, not her phone, as if she were a child and he had the right to chastise her in that manner.

88. He talked down to Bratton as if Bratton were inferior and it was demeaning and berating. Bratton told him he needed to talk to Chairman Schlapp about this because she [Bratton] reported to Schlapp and this is what he was directing her [Bratton] to do.

89. As documented in emails, Bratton immediately reported Safavian's threat to Lynne Rasmussen and Matt Schlapp.

90. A few weeks later, Matt Schlapp had an interview with an ultra-religious media outlet about his book—his publisher set up this interview. It did not go well. Matt Schlapp blamed Bratton for his failure. He said: "I needed you to protect me!"  Bratton explained that she did not take steps to prepare Schlapp for the interview given the threat by Safavian, as the interview was related to Schlapp's book and not ACU or CPAC.

*Laura N. ("LN")*

91. In several emails from LN, she belittles Bratton. She wrote to Bratton as if Bratton were inferior and beneath her.

92. It started because Bratton caught her and her team member in a blatent lie. Bratton reported the falsehood to Matt Schlapp; after which LN began targeting Bratton with vicious emails.

93. Bratton complained of this treatment, but nothing was ever done to address it.

*Bratton's concurrent Employment with Media Links LLC*

94. The reason stated for Bratton's termination is that she did not report that she worked for Media Links LLC at the time she was hired.

95. Prior to hiring Bratton, Matt Schlapp and Mercedes Schlapp were aware of Bratton's employment with Media Links LLC.

96. When Matt Schlapp asked Bratton to take the job, Bratton disclosed that she was working for Media Links and was very clear with him that she wanted to keep that job. He said he did not have a problem with it.

97. Bratton also told Mercedes Schlapp over lunch at a nearby restaurant. Bratton asked Mercedes Schlapp if Bratton should inform Lynne Rasmussen of her job with Media Works, LLC, and she told Bratton "no." Mercedes Schlapp said she and Matt Schlapp knew and that's all who needed to know. She said Rasmussen does not know how the "mix is made" and needed to be left out of all things concerning communications. Mercedes Schlapp went on to say she felt Rasmussen was ineffective in her previous role.

98. While Bratton was told not to tell Rasmussen, during a conversation with Rasmussen and Matt Schlapp, the issue came up during a conversation about AH (his potential

termination) as AH had told Rasmussen about Bratton's job with Media Works LLC (presumably a result of his snooping in her office), and Schlapp stated "oh yes, you mean the Taiwan thing, that is not a problem."

99. It is clear that the reason given for her termination was false and is a pretext for discriminatory retaliation based on race.

### *The Defamatory Statements that Bratton was "an agent for China"*

100. Following Bratton's termination, she had contact with several individuals who stated to her that Matt Schlapp, Mercedes Schlapp, and general counsel David Safavian were making statements to others that she [Bratton] was an agent for China, and that is why she was fired.

101. On Saturday, April 4, 2022; Bratton was in Wheaton with other former CPAC / ACU colleges. Ruth Fisher was among them. She told Bratton that a current CPAC / ACU employee as well as a volunteer (Macy C and Turner J., respectively) conveyed to her that the Schlapp's and David Safavian were saying that Bratton was terminated because she was "in cahoots with China."

102. Fisher's significant other chimed in saying quote: "They [the Schlapp's and David Safavian] are basically saying you're a terrorist."

103. This false rumor is libelous and slanderous. It has harmed Bratton's reputation irreparably.

104. Both Lynne Rasmussen and David Safavian are attorneys. It appears they were reckless with sensitive information (information of a previous employee's termination / separation).

## COUNT I
## DEFAMATION *Per Se*

105. Plaintiff incorporates by reference the allegations contained in paragraphs 1-104.

106. The acts and omissions of Defendant CPAC and/or the ACU and its employees / agents: Matt Schlapp, Mercedes Schlapp and David Safavian, as described *supra* constituted an effort to defame Plaintiff's character.

107. The acts of Defendants CPACo, Matt Schlapp, Mercedes Schlapp and Davis Safavian maliciously and jointly presenting and describing the Plaintiff in a false light to third parties as described in this Complaint, served to directly harm her solid and good reputation.

108. The defamatory harm of the Defendant CPAC and its agents / employees against the Plaintiff, as described in the preceding paragraph, constitutes *per se* defamation as false allegations of criminal conduct. Further, the acts of the Defendant and its agents / employees serve to not only significantly and materially harm Plaintiff personally, but professionally in her capacity as a well-respected and successful media professional, and her intent, capacity, and ability to continue in and further her career for which she cares deeply.

109. Defendant's defamatory statements were made with malice and with the intent to harm Plaintiff's reputation and retaliate against Plaintiff for reporting unlawful behavior in the workplace.

110. As a result of Defendant's defamatory statements, Plaintiff has suffered damages, including but not limited to, harm to their reputation, lost employment opportunities, and emotional distress.

111. Defendant's conduct has caused Plaintiff to suffer economic damages in an amount to be determined at trial, plus interest and costs.

WHEREFORE, Plaintiff requests that this Court enter judgment in their favor and against the co-defendant companies, and against Matt Schlapp, Mercedes Schlapp and David Safavian in both their individual and agent capacities, and award Plaintiff the following relief against said Defendants, jointly and severally:

a. Compensatory damages for harm to her reputation, lost employment opportunities, and emotional distress, in the amount of $10,000.000.00, or other amount to be determined at trial;
b. Punitive damages of $10,000,000.00, or other amount to be determined at trial;
c. Prejudgment and post-judgment interest on all damages awarded;
d. Costs and expenses incurred in this action, including reasonable attorney's fees;
e. Any other relief that the Court deems just and proper.

## COUNT II
## RETALIATION - VIOLATION OF 42 USC §1981

112. Plaintiff incorporates by reference the allegations contained in paragraphs 1-104.

113. Plaintiff engaged in protected activity when she complained of behavior, she in good faith deemed to be discriminatory against her protected class – African-American.

114. Rather than investigate and resolve her complaints, her employer, the ACU and/or CPAC, retaliated against her and terminated her employment, then defamed her character.

115. Defendant's retaliation against Plaintiff violates public policy and constitutes wrongful conduct in violation of 42 USC §1981.

116. Defendant CPACo's conduct has caused Plaintiff to suffer economic damages in an amount to be determined at trial, plus interest and costs.

WHEREFORE, Plaintiff requests that this Court enter judgment in their favor and against the co-defendant companies / her former employer, and award Plaintiff the following relief:

a. Compensatory damages for harm to her reputation, lost employment opportunities, and emotional distress, in the amount of $10,000.000.00, or other amount to be determined at trial;

b. Punitive damages of $25,000,000.00, or other amount to be determined at trial;

c. Prejudgment and post-judgment interest on all damages awarded;

d. Costs and expenses incurred in this action, including reasonable attorney's fees;

e. Injunctive relief to ensure the ACU/CPAC and its officers and executives do not engage in discriminatory behavior in violation of federal law in the future.

f. Any other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims.

Respectfully submitted,

**REGINA BRATTON,**

By Counsel,

**THE BROWN FIRM PLLC**

_____
Christopher E. Brown, Esq.
VSB#39852
526 King St. Suite 213
Alexandria, VA 22314
Tel: 703-924-0223
Fax: 703-997-2362
cbrown@brownfirmpllc.com
*Counsel for Plaintiff*